UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
KEITH HAYWOOD,                                    :

                      Plaintiff,                  :

           -against-                              :     **REPORT AND RECOMMENDATION**

CITY OF NEW YORK, in its official capacity,   :         12 Civ. 6566 (PAC)(KNF)
MICHAEL LATUNJI, Medical Admin. for
OBCC New York City Health Services, BOB      :
BARKER, CO.,
                                                  :
                      Defendants.
----------------------------------------------------------X
BOB BARKER COMPANY, INC.,                         :

                Cross Claimant,                   :

           -against-                              :

CITY OF NEW YORK, in its official capacity,   :
MICHAEL LATUNJI, Medical Admin. for
OBCC New York City Health Services,          :

                Cross Defendants.                 :
----------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE PAUL A. CROTTY, UNITED STATES DISTRICT JUDGE

        Keith Haywood ("Haywood") commenced this action pro se seeking damages, pursuant

to 42 U.S.C. § 1983 and state law, against the City of New York ("the City"), Michael Latunji

("Latunji") and Bob Barker, Co. ("BB"). The City and Latunji answered.[1] Barker answered and

made crossclaims against the co-defendants for indemnity and contribution. No answers were

---

[1] Although Latunji defaulted initially, his default was set aside, see Docket Entry No. 67, giving effect to the amended answer, filed jointly by the City and Latunji, see Docket Entry No. 28.

1

filed to BB's crossclaims. Before the Court are motions for judgment on the pleadings to dismiss Haywood's claims, pursuant to Rule 12(c) of the Federal Rules of Civil procedure, by: (1) BB; and (2) the City and Latunji.

### *Allegations in the Complaint*

Haywood alleges that, on November 4, 2011, he was taken into custody by the Division of Parole for violating his curfew, and lodged at the Otis Bantum Correctional Center ("OBCC") on Rikers Island, New York. He waited five hours to be called to the intake area desk, where he surrendered his personal property, including his orthopedic boots. He was given a "very cheap pair of black canvas sneakers that had no arch supports in them at all." After Haywood complained, he was told that he could keep his orthopedic boots, as long as a doctor authorized it by issuing him a medical note.

Haywood was moved to a cell for further processing, including a search of his body. He remained in the cell for four hours with approximately forty other prisoners. When the search started, Haywood "noticed that prisoner[s] were being searched in an open area where anyone can come by and see you nude. The other inmates could see you while you were made to squat by spreading your buttocks and to make matters even worse, there are two live [cameras] in the search area located in the ceiling above the area." Haywood "made a verbal complaint as to why there were no curtains, floor mats, to [create] some type of privacy and dignity," but the guards ignored him and "started laughing." Haywood asked for a supervisor to be summoned. Thereafter, Haywood asked to see a captain who appeared with other guards and directed Haywood to remove his clothes in front of the security cameras on the ceiling. Although Haywood complained, he complied because he was threatened and he feared "being assaulted and falsely charged with assault." After the search was completed, Haywood was taken to the

2

OBCC medical clinic, where he was examined by a physician and received a note authorizing the return of his medical boots. When Haywood returned to the intake area with the medical note, he was told that his medical boots "were gone," and he had to see the physician to retrieve them from storage.

In mid-November 2011, Haywood visited the medical clinic to inquire about his boots. Latunji "came to give the plaintiff a quick look over and interview in front of other prisoner[s] in the waiting area," and "[u]pon looking down at the plaintiff's feet (plaintiff still had his shoes on)," he informed Haywood that "cheap shoes were fine for [his] feet, and that its [sic] DOC policy." Haywood asked Latunji how he could make that assessment without examining his feet and whether he was "a doctor or orthopedic specialist," but Latunji "became irrate for no reason." When Haywood asked for Latunji's name, Latunji refused to give it to him. Latunji summoned an area Captain to escort Haywood from the clinic. Haywood recalls that he was in pain, his legs and lower back hurt and his feet were swollen. The soles on his shoes started to fall apart after being wet from the shower area. Haywood filed grievances subsequently, including that he was "being strip searched in front of female guards during a cell block search a couple of times and [during] the searches conducted in the intake area at OBCC," but received no responses. According to Haywood, on numerous occasions during his stay at OBCC, he was: (a) denied recreation for lack of proper clothing; (b) denied "adequate library materials such as envelope(s), papers, pens, up to date law journal[s], up-dated lawyer's diary"; (c) denied "deodorant, stamps (postal)"; (d) subjected to retaliation; (e) "searched in front of live camera[s] within the intake area"; (f) deprived of privacy during strip searches; (g) subjected to retaliatory searches by guards and captains because he made complaints; (h) denied requests to speak with a supervisor; (i) denied requests to speak with a supervisor unless he spoke "to the unit guard first

in violation of DOC policy"; (j) subjected to excessively long processing of his property to be retrieved by his family; and (k) placed at risk when guards "search[ed] other people's underwear and then your underwear with the same gloves on, exposing you to any type of STD cross contamination."

Haywood alleges that BB "designed a shoe that has no insoles for arch support to prevent foot pain, and knew or should have known their product would be worn by" prisoners of different height and weight and varying foot ailments, as well as the general public. According to Haywood, BB's "design consists of defective sole material that comes apart when wet, or from normal wear, causing the shoe to develop a large flap from the heel to the middle of the shoe." He asserts that BB's design "is defective for failure to withstand the weight of a heavy [person] and coming apart after wearing a couple of times." BB's defective design caused Haywood pain in his foot, back, leg and aggravated his "pre-existing foot condition." Haywood asserts that BB failed to warn that its shoes: (a) "may cause foot problems, to wit, pain in persons with fallen arches, high blood pressure, diabetes, water retention, etc., to name a few"; (b) should not be worn in wet conditions; or (c) "would split from the heel to the middle front of the shoe without warning, especially while playing basketball in them or [through normal] general wear."

Haywood asserts constitutional violation claims against: (1) the City, based on "its policies of taking your shoes and replacing them with cheap sneakers that will literally fall apart" and for creating "a hostile and sexually charged environment through their strip search policies"; (2) Latunji, for deliberate indifference to his serious medical needs, based on his denial of treatment without conducting an examination, refusal to give Haywood "any type of arch support," rejection of the treatment recommended by the physician who examined Haywood

4

initially and refusal to give Haywood his name; and (3) Latunji, for negligently failing to provide proper medical treatment.  Haywood also asserts that Latunji violated his civil rights under state law, and that BB is liable to him under state law for designing defective shoes and failing to warn that its shoes may cause foot problems and may not be worn in wet conditions.

### BB's Contentions

BB contends that the "plaintiff's first, second, third and fourth causes of action do not contain any allegations against" it and should be dismissed.  Furthermore, the court should decline to exercise supplemental jurisdiction over the state law product liability claims against BB, for the same reason the court declined to exercise supplemental jurisdiction in "*Walker v. Schriro*, 2013 WL 1234930 (SDNY 2013)," namely due to "the early state of this litigation and the markedly distinct nature of the state law claims as compared to Plaintiff's federal claims." Even if the court does not decline to exercise its supplemental jurisdiction, BB asserts that the plaintiff failed to state a strict liability claim because, other than "generalized and generic complaints about the footwear he was issued," he "fails to specify the precise defects with the 'pair of black canvas sneakers'" and "how he was injured as a result of those defects." According to BB, although the plaintiff makes "formulaic recitation of the elements of a strict product liability cause of action alleging defective design and a failure to warn," the complaint contains "no allegation, let alone any proof, that the 'pair of black canvas sneakers' which was issued to the plaintiff was in any manner 'unreasonably dangerous' other than it was not as comfortable as his own 'orthopedic boots.'"  BB maintains that the lack of comfort in a pair of shoes does not make them unreasonably dangerous, and "the comfort and fit of a pair of shoes is entirely personal to the wearer of the shoes" and not within the control of the manufacturer.  BB contends that the plaintiff failed to assert that "any of the alleged defects in the 'pair of black

canvas sneakers' was the sole proximate cause of any physical injury to the plaintiff other than being uncomfortable."

BB asserts that the plaintiff's failure to warn theory is "moot and inapplicable" to it "because the plaintiff did not freely purchase or acquire the 'pair of black canvas sneakers,'" so any warning "would have been irrelevant and ineffectual as to the plaintiff since he had no choice regarding the wearing of the 'pair of black canvas sneakers.'" Furthermore, the plaintiff's allegations that the pair of black canvas sneakers caused him foot, back and leg pain "do not describe a medical condition that a reasonable person would describe as one of 'urgency' or 'one that may produce death, degeneration, or extreme pain.'" According to BB, courts "routinely rejected uncomfortable, ill-fitting or painful footwear as a basis for liability."

***The City and Latunji's Contentions***

The City and Latunji contend that Haywood failed to allege the existence of an unconstitutional municipal policy or program because he "merely asserts that he alone was subjected to allegedly unconstitutional conditions, and comes to an unfounded conclusion that such conditions resulted from municipal policies of issuing 'very cheap' standard footwear for individuals incarcerated on Riker's [sic] Island, for conducting strip searches of detainees upon their arrival at a Correctional Facility, and for myriad other conditions that Plaintiff finds disagreeable." They contend that, not only did the plaintiff allege a single incident, but he also named only one individual defendant who is below the policy-making level, and he made no allegations that Latunji "had anything to do with Plaintiff's personal footwear being taken, the allegedly defective footwear being issued, Plaintiff being strip searched or any other conclusory allegations." The City and Latunji assert that the plaintiff "does not sufficiently connect any alleged custom or policy to any constitutional injury."

The City and Latunji maintain that the plaintiff's deliberate indifference to his medical needs claim must fail as a matter of law because he "does not allege that he was in extreme pain or debilitated by the pain or his alleged medical condition." The plaintiff's claim that the footwear issued by the department was cheap and had no arch support must be rejected because courts "routinely" reject claims of "uncomfortable or ill-fitting footwear as a basis for liability." The City and Latunji contend that the plaintiff failed to allege that Latunji was aware of his discomfort or that, even if he was aware that the plaintiff was in pain, he was aware of and indifferent to a substantial risk of serious harm to the plaintiff. According to the City and Latunji, "mere discomfort in the feet or back is not sufficiently serious to be actionable under § 1983."

The City and Latunji contend that the plaintiff's medical malpractice claim must fail because he failed to "satisfy the deliberate indifference standard," since he alleged that Latunji "conducted a 'quick' visual examination of Plaintiff before concluding that Plaintiff did not require special footwear." Moreover, the plaintiff's negligence claims are not actionable under § 1983. The City and Latunji assert that the plaintiff failed to allege any injury that affects his daily activities significantly or causes chronic and substantial pain.

The City and Latunji contend that the plaintiff's privacy "claims do not rise to the level of a violation of Plaintiff's constitutional rights," because "[t]he presence of video cameras in the intake area where initial strip searches occur does not make the condition of the strip search complained about" unreasonable "where multiple detainees are in close proximity with one another and with prison officials, and, notably, have not yet been searched for contraband, including weapons." They assert that, absent "substantial evidence in the record to indicate that prison officials have exaggerated their response to security considerations, courts should

7

ordinarily defer to their expert judgment in such matters."  Additionally, the plaintiff's claim that

his constitutional rights were violated when he was searched in front of female guards should be

dismissed because he "has not provided a scintilla of evidence that it was intentional, continuous

or lengthy."

According to the City and Latunji, the remaining allegations fail to state a claim for

municipal liability because they are vague, speculative and conclusory.  Moreover, the plaintiff

only named Latunji and did not allege that Latunji was involved in the remaining violations, and

he "provided no factual content to support these claims; he fails to describe the dates, times,

circumstances or effects surrounding this 'laundry list' of allegations."  "[N]one of these claims,

even if taken as true, rises to the level of a violation of Plaintiff's constitutional rights."  For

example, his claim that stamps have been unavailable on occasion must fail "because a delay in

being able to work on one's legal action or communicate with the courts does not rise to the

level of a constitutional violation."  Similarly, Haywood's inadequate law-library services claim

must fail because no right to law-library services or legal assistance exists.  Moreover,

Haywood's claim that he was deprived of toiletries temporarily does not violate the Eighth

Amendment.  The plaintiff's retaliation claims also must fail because he did not describe a

protected activity or a causal connection between his actions and the alleged adverse actions by

OBCC staff, and his claims concerning his inability to speak with "supervisory personnel

suggest carelessness or callousness by OBCC staff," rather than a "deliberate indifference

necessary to state a claim under section 1983."

The City and Latunji contend that, in light of the plaintiff's failure to state a claim under

Section 1983, the court should decline to exercise supplemental jurisdiction over the state-law

claims.  Similarly, his claims alleging violations of the New York Constitution "are not

8

supported by any credible evidence and are remediable under federal statute." According to the City and Latunji, "because Plaintiff has alleged violations of his constitutional rights under 42 U.S.C. § 1983, he is precluded from alleging a direct, state constitutional claim for personal injuries."

***Plaintiff's Contentions***

In opposition to both motions for judgment on the pleadings, Haywood submitted his affirmation and memorandum of law. Haywood contends that the City "created a policy that in essence [impeded] any medical decisions prescribed by medical person[ne]l, to wit, medically ordered orthopedic shoes," and it "created other policies, procedures, customs and usage, that allowed for nude strip searches in the open in front of both sexes." According to Haywood, the City "created a policy and custom of taking your personal shoes and giving you defective BBs," and has a "policy of strip-searching you in front of other[s] as well as the opposite sex, and in front of camera[s]." Haywood maintains that courts have noted the importance of certain privacy in prison, such as "a special sense of privacy in . . . genitals, and involuntary exposure of them in the presence of the other sex[, which] may be especially demeaning and humiliating when not reasonably necessary." Haywood contends that the City's policy "interfered and basically impeded independent medical decisions in relationship to any treatment plan regarding pain and injury caused by BB shoes," since his "daily pain is more than just . . . mere discomfort, . . . especially if you have a pre-existing medical condition." Latunji's enforcement of "the DOC shoe policy interfered with the plaintiff's medical treatment plan," prescribed initially, and Latunji did not examine Haywood physically, or give him any pain medication, or prescribe arch supports available at the prison pharmacy. According to Haywood, although the Constitution "may not mandate comfortable prisons," it does mandate "that prisoners may not be deprived of

basic human needs (food, clothing, shelter, medical care, and reasonable safety)."

Haywood contends his only claim against BB is a strict product liability claim based on diversity jurisdiction, and his claims should be interpreted liberally because he is proceeding pro se. According to Haywood, he is "not required to prove that the manufacturer acted unreasonably in designing or marketing the product," only that "the product, as designed, was not reasonably safe." Furthermore, he can prove his claim by circumstantial evidence and, as an injured party, he "need not identify a specific defect in the product." Haywood maintains that, if his claims had no merit, they would have been dismissed already, pursuant to 28 U.S.C. § 1915, but they were not.

Haywood contends that, should his strict liability claim be dismissed, he "would be entitled to re-file these claims in state court, at which time, the defendant BB will most likely remove the action" back to this court. Haywood seeks "an order to sever the product liability claims against BB," pursuant to Rule 21 of the Federal Rules of Civil Procedure. Finally, Haywood contends that, if his pleadings are defective, he should be allowed to amend his complaint. Haywood's affirmation, in essence, repeats the contentions set forth in his memorandum of law.

### BB's Reply

BB contends that the plaintiff concedes in his opposition papers that his only claim against it is a state-law product liability claim. According to BB, the plaintiff's affirmation in opposition to its motion shows that any shoes issued by the corrections officials, other than his own "orthopedic boots," would have been uncomfortable for him. The plaintiff makes only general and generic complaints about the shoes he was issued, and he fails to specify any defect in the shoes' design or how he was injured as a result of that design defect. BB concedes that the

10

plaintiff's strict liability claim can be proven by circumstantial evidence and that he need not

identify a specific defect in the product, but contends that the plaintiff "must prove that the

product did not perform as intended and exclude all other causes for the product's failure that is

[sic] not attributable to the product manufacturer," which the plaintiff failed to do.  BB asserts

that the plaintiff claims that the shoes manufactured by BB lack arch support.  BB requests that

the Court "take judicial notice of the fact that there are many types of footwear on the market

and in common usage that have no visible arch support," such as "flip-flops, sandals, and

moccasins."  According to BB, the fact that shoes do not provide arch support "does not mean

that the footwear is defective," since "[t]he lack of support is not a design defect."  BB contends

that "[u]sing shoes that do not have arch support in them, when ones [sic] feet require arch

support, does not mean the shoes are defective.  It just means the user purchased or was given

the wrong size or type of shoes."  Similarly, the plaintiff's claim that the shoes manufactured by

BB are defective because they do not come in different widths should be rejected, because the

width of the shoes issued to the plaintiff is not within BB's control, and manufacturing shoes in

one width is not a design defect. Moreover, the Court should take judicial notice of the fact that

the shoes, regardless of their design, "can cause pain in ones [sic] feet and lower back if the

shoes are not fit properly to the user's feet."  According to BB, the plaintiff's failure to warn

claim should fail because whatever warning was required would have been "irrelevant and

ineffectual as to the plaintiff given the fact that plaintiff's use of the shoes was mandated by the

prison officials."  BB asserts that the plaintiff did "not adequately [plead] a circumstantial cause

of action in strict product liability."

***The City and Latunji's Reply***

      The City and Latunji contend that, "[w]hile Plaintiff now argues that Dr. Latunji did not

'physically examine the plaintiff . . . nor . . . prescribe any pain medication or prescribe arch supports' . . . Plaintiff plainly alleges in his Complaint that Dr. Latunji gave the Plaintiff 'a quick look over and interview.'" The plaintiff's contention that Latunji's "diagnosis after a colloquy and visual examination of Plaintiff . . . was insufficiently thorough" and his "preference for alternative medical diagnosis does not support an Eighth Amendment claim." Moreover, "claims of negligence are generally not actionable under federal law," and the plaintiff's allegations "do not rise to the level of a constitutional violation." Even assuming that the plaintiff did not receive medical attention, his injury was not sufficiently serious because he "does not allege that he was in extreme or debilitating pain," as he alleges "that the footwear falls apart due to 'normal, general wear,' and while 'playing basketball.'" The City and Latunji assert that the plaintiff's privacy claims should be dismissed because he failed to allege that any physical exposure to female officers was intentional, continuous or lengthy, and he did not identify any individual who allegedly conducted the improper searches.

With respect to the plaintiff's claims of municipal liability, the City and Latunji contend that Haywood failed to "provide some description of the nature of the policy or custom," and he "cannot solely rely on boilerplate or bald assertions that a municipality has a pattern or policy of unconstitutional behavior." Furthermore, courts reject consistently "claims stemming from confiscation of personal footwear and issuance of institutional footwear," and uphold strip searches in the presence of correction officers of either sex.

According to the City and Latunji, the plaintiff's motion for leave to amend the complaint should be denied because he did not provide "any preview of the amendments he would make," and his claims, "even if bolstered with more specific facts, cannot survive a motion to dismiss," since his injuries "are not objectively serious enough to implicate the Constitution."

## LEGAL STANDARD

### *Rule 12(c) of the Federal Rules of Civil Procedure*

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). In determining a motion under Rule 12(c), courts apply the standard applicable to a motion to dismiss under Rule 12(b)(6). See Bank of New York v. First Millennium, Inc., 607 F.3d 905, 922 (2d Cir. 2010). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)). "Conclusory allegations that the defendant violated the standards of law do not satisfy the need for plausible factual allegations." Kiobel v. Royal Dutch Petroleum Co., 621 F.3d 111, 191 (2d Cir. 2010) (citing Twombly, 550 U.S. at 555, 127 S. Ct. at 1965). On a motion under Rule 12(c), "[a]ll allegations in the complaint must be accepted as true" and "all inferences must be drawn in favor of the plaintiff." Sheppard v. Beerman, 94 F.3d 823, 827 (2d Cir. 1996). "It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted 'to raise the strongest arguments that they *suggest*.'" Triestman v. Federal Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (citation omitted).

"If, on a motion under Rule . . . 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). "Factual allegations contained in legal briefs or

memoranda are also treated as matters outside the pleading for purposes of Rule 12(b)," <u>Fonte v. Bd. of Managers of Continental Towers Condo.</u>, 848 F.2d 24, 25 (2d Cir. 1988), and, accordingly, Rule 12(c). Whether to convert a motion under Rule 12(c) into one for summary judgment under Rule 56 is within the court's discretion. <u>Cf. Aetna Cas. & Surety Co. v. Aniero Concrete Co.</u>, 404 F.3d 566, 573 (2d Cir. 2005) (converting a motion under Rule 12(b)(6) into one under Rule 56 is discretionary).

Here, the plaintiff submitted his affirmation in opposition to both motions under Rule 12(c). The plaintiff's affirmation is a matter outside the pleadings and is excluded from consideration on both motions under Rule 12(c). Thus, no need exists to convert the instant motions into motions for summary judgment.

### *Judicial Notice Pursuant to Rule 201 of the Federal Rules of Evidence*

When determining a motion to dismiss pursuant to Rule 12(b)(6), courts may consider "matters of which judicial notice may be taken." <u>Brass v. Am. Film Techs., Inc.</u>, 987 F.2d 142, 150 (2d Cir. 1993). "The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). "The court . . . must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2). "Because the effect of judicial notice is to deprive a party of the opportunity to use rebuttal evidence, cross-examination, and argument to attack contrary evidence, caution must be used in determining that a fact is beyond controversy under Rule 201(b)." <u>Int'l Star Class Yacht Racing Assoc. v. Tommy Hilfiger U.S.A., Inc.</u>, 146 F.3d 66, 70 (2d Cir. 1998).

In its reply memorandum of law, BB requested that the Court take judicial notice of the

14

following facts: (1) "there are many types of footwear on the market and in common usage that have no visible arch support"; and (2) "shoes – regardless of their design, the quality of the materials, and cost – can cause pain in ones [sic] feet and lower back if the shoes are not fit properly to the user's feet." BB's request for the Court to take judicial notice is made in response to the plaintiff's affirmation, namely "Docket # 46," paragraphs 22 and 21, respectively. Since the Court excludes the plaintiff's affirmation from consideration of the instant motions, it is not necessary to entertain BB's judicial-notice request related to the plaintiff's affirmation.

Alternatively, the Court declines to take judicial notice of the facts as requested by BB. BB's request No. 1 is denied, because its statement, "there are many types of footwear on the market and in common usage that have no visible arch support," is subject to reasonable dispute, since it is neither generally known nor can it be accurately and readily determined from sources whose accuracy cannot reasonably be questioned, see Fed. R. Evid. 201(b), and BB failed to supply necessary information enabling the Court to take judicial notice of the requested fact, see Fed. R. Evid. 201(c)(2). BB's request No. 2 is denied, because its statement, "shoes – regardless of their design, the quality of the materials, and cost – can cause pain in ones [sic] feet and lower back if the shoes are not fit properly to the user's feet," is not a statement of fact but a conclusion of law on the issue of causation.

***Municipal Liability under § 1983 Claims***

"A municipality and its supervisory officials may not be held liable in a § 1983 action for the conduct of a lower-echelon employee solely on the basis of respondeat superior." Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 122 (2d Cir. 1991) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694, 98 S. Ct. 2018, 2037 (1978)). Thus, to establish municipal liability under § 1983, a plaintiff must show that "the conduct that caused the unconstitutional deprivation was

undertaken pursuant to 'a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers[,] . . . [or] pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels.'" Jeffes v. Barnes, 208 F.3d 49, 57 (2d Cir. 2000) (quoting Monell, 436 U.S. at 690-91, 98 S. Ct. at 2036).

### The Eighth Amendment's Deliberate Indifference Claim

"The Eighth Amendment's prohibition against cruel and unusual punishment requires prison conditions to be 'humane,' though not necessarily 'comfortable.'" Jabbar v. Fischer, 683 F.3d 54, 57 (2d Cir. 2012) (citation omitted). "To establish an Eighth Amendment violation arising out of inadequate medical treatment, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'" Johnson v. Wright, 412 F.3d 398, 403 (2d Cir. 2005) (quoting Estelle v. Gamble, 429 U.S. 97, 104, 97 S. Ct. 285, 291 (1976)). The plaintiff must establish both the objective and subjective elements of the claim, respectively: (1) the deprivation of medical treatment exposed the plaintiff "to conditions that pose an unreasonable risk of serious damage to [the plaintiff's] future health"; and (2) "[t]he prison official must know of, and disregard, an excessive risk to inmate health or safety." Jabbar, 683 F.3d at 57 (quotation marks and citation omitted). Concerning the second element, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837, 114 S. Ct. 1970, 1979 (1994).

### Strict Product Liability Claim

"Generally, in a strict products liability claim, 'the manufacturer of a defective product is liable to any person injured or damaged if the defect was a substantial factor in bringing about his injury or damages.'" Doomes v. Best Transit Corp., 17 N.Y.3d 594, 607, 935 N.Y.S.2d 268, 276

16

(2011) (quoting <u>Voss v. Black & Decker Mfg. Co.</u>, 59 N.Y.2d 102, 106-07, 463 N.Y.S.2d 398, 401 (1983)). A strict product liability claim may be asserted based on: "(1) [a] manufacturing defect, (2) a design defect, or (3) a failure to provide adequate warning regarding the use of a product." <u>Id.</u> "[A] defectively designed product is one which, at the time it leaves the seller's hands, is in a condition not reasonably contemplated by the ultimate consumer and is unreasonably dangerous for its intended use; that is one whose utility does not outweigh the danger inherent in its introduction into the stream of commerce." <u>Robinson v. Reed-Prentice Div. of Package Mach. Co.</u>, 49 N.Y.2d 471, 479, 426 N.Y.S.2d 717, 720 (1980). To establish a claim of strict product liability based on a design defect(s), a plaintiff must show that: (1) "the manufacturer breached its duty to market safe products when it marketed a product designed so that it was not reasonably safe"; and (2) "the defective design was a substantial factor in causing plaintiff's injury." <u>Voss</u>, 59 N.Y.2d at 107, 463 N.Y.S.2d at 402. "A manufacturer has a duty to warn against latent dangers resulting from foreseeable uses of its products of which it knew or should have known." <u>Rastelli v. Goodyear Tire & Rubber Co.</u>, 79 N.Y.2d 289, 297, 582 N.Y.S.2d 373, 376 (1992). A claim of strict product liability may be predicated on circumstantial evidence where a plaintiff shows "that the product has not performed as intended and excluded all causes of the accident not attributable to defendant." <u>Halloran v. Va. Chem. Inc.</u>, 41 N.Y.2d 386, 388, 393 N.Y.S.2d 341, 343 (1977).

### *Amending a Complaint*

"[W]hen a complaint is dismissed pursuant to Rule 12(b)(6)" and, consequently, Rule 12(c), "and the plaintiff requests permission to file an amended complaint, that request should ordinarily be granted." <u>Ricciuti</u>, 941 F.2d at 123. "Leave to amend, though liberally granted, may properly be denied for: 'undue delay, bad faith or dilatory motive on the part of the movant,

repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008) (quoting Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962)).  The court should freely give leave [to amend the complaint] when justice so requires. Fed. R. Civ. P. 15(a)(2).

## APPLICATION OF LEGAL STANDARD

### *Municipal Liability under § 1983 Claims*

The City and Latunji contend that Haywood makes only vague reference to any unconstitutional policy and fails to connect any policy to any injury actually suffered.  However, Haywood's allegations, taken as true, describe in some detail the policies of which he complains, namely, the policy: (1) concerning the manner in which a strip-search is conducted of new arrestees in an intake area, at OBCC, on Rikers Island; (2) of conducting cell block strip-searches of male prisoners in front of the female correction officers; and (3) of taking away prisoners' shoes and assigning cheap shoes that fall apart when worn or wet.  Nothing vague exists about allegations that: (a) Haywood and other prisoners he observed were strip-searched while exposed to other prisoners, anyone who comes by and two "live" cameras; (b) Haywood was strip-searched in front of female correction officers during multiple cell-block searches; and (c) prisoners' shoes are taken away and replaced with "very cheap sneakers that will literally fall apart" when you wear them and if they come into contact with water.  Haywood also alleged that, during his stay at OBCC, he was subjected to other policies on numerous occasions, including "guard's searching other people's underwear and then your underwear with the same gloves on, exposing you to any type of STD cross contamination." (Compl.¶ 31)  However, he failed to provide any particulars concerning the policies of which he complained in the

complaint's ¶ 31.

Contrary to the City and Latunji's contention, Haywood did connect the policies of which he complained to his alleged constitutional injuries. For example, Haywood alleged that the policy providing for the manner in which the intake strip-searches are conducted "with no privacy," caused him humiliation, embarrassment, shame and loss of dignity. The Supreme Court's decision in Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington, __ U.S. __, 132 S. Ct. 1510 (2012), holding that the Fourth and Fourteenth Amendments do not require that some detainees be exempt from the more invasive search procedures absent reasonable suspicion of a concealed weapon or contraband, id. at 1523, does not bar Haywood's claim that the policy providing for the manner in which the intake strip-searches are conducted violates the Constitution. Moreover, at this stage of the litigation, Haywood is not required to show any evidence, let alone "substantial evidence," as the City and Latunji seem to suggest (Docket Entry No. 43, page Nos. 15-17), and his allegations are taken as true and all inferences drawn in his favor for the purposes of the instant motions. Thus, the complaint contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face with respect to municipal liability.

In this circuit, pursuant to Monell v. Dep't of Soc. Servs., 436 U.S. 658, 98 S. Ct. 2018 (1978), "municipal liability for constitutional injuries may be found to exist even in the absence of individual liability, at least so long as the injuries complained of are not solely attributable to the actions of named individual defendants." Barrett v. Orange Cnty. Human Rights Comm'n,194 F.3d 341, 350 (2d Cir. 1999). Accordingly, municipal liability may be asserted even where claims against individual defendants are dismissed.

*The Eighth Amendment Deliberate Indifference Claim*

Haywood's claim of deliberate indifference to his medical needs against Latunji is meritless. Haywood alleged that, after he was taken into custody and his boots were taken away, on November 4, 2011, he had a physical examination and blood work done at the OBCC medical clinic on November 5, 2011. Despite having a medical note issued to Haywood on that day, authorizing him to receive his "medical boots back," he waited until the "middle of November" in 2011 to "inquire about his boots." Upon inquiry in the "middle of November," Latunji gave Haywood "a quick look over and interview," and "upon looking at the plaintiff's feet (plaintiff still had his shoes on), Latunji stated that the cheap shoes were fine for my feet, and that its [sic] DOC policy." Although Haywood "was in pain and his legs and lower back hurt bad, and his feet were swollen," the fact that he waited from November 5, 2011, to the "middle of November" 2011 to inquire about his medical boots, demonstrates that any pain or injury he might have suffered as a result of wearing the jail-mandated shoes was not sufficiently serious or urgent for the purposes of an Eighth Amendment deliberate indifference claim. To be sufficiently serious for the purposes of a deliberate indifference claim, a medical condition must be of "urgency, one that may produce death, degeneration, or extreme pain." Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996) (citation omitted). Haywood's allegations of pain in his legs and lower back and the swelling of his feet, do not constitute a "sufficiently serious" medical condition, as his circumstance was not one of urgency and he was neither in extreme pain nor unable to wear "the cheap shoes" in the "middle of November," when he alleges Latunji deprived him of his constitutional rights. Moreover, Latunji gave Haywood "a quick look over and interview" and, although Latunji determined that "the cheap shoes were fine" for Haywood's feet without examining his feet, Latunji's failure to examine Haywood's feet prior to making his

20

determination does not amount to a knowing and deliberate disregard of an excessive risk to Haywood's health and safety. "[D]eliberate indifference entails something more than mere negligence," and absent "culpable recklessness," "mere medical malpractice is not tantamount to deliberate indifference." Id. (quotation marks and citations omitted). Taking Haywood's allegations as true and drawing all reasonable inferences in Haywood's favor, Latunji's conduct did not amount to deliberate indifference for the purpose of an Eighth Amendment claim. Accordingly, permitting Haywood to amend his Eighth Amendment claim against Latunji would be futile and its dismissal is warranted.

**State-Law Claims**

The City and Latunji contend that the court should decline to exercise supplemental jurisdiction over Haywood's state-law claims if his federal claims are dismissed. Since dismissing Haywood's municipal liability claim is not justified, declining to exercise supplemental jurisdiction over his state-law claims is not warranted.

**Strict Product Liability Claims**

BB's contention that supplemental jurisdiction over Haywood's state-law strict product liability claim should be denied, for the same reasons as in Walker v. Schriro, No. 11 Civ. 9299, 2013 WL 1234930 (S.D.N.Y. March 26, 2013), is meritless. Unlike in Walker, Haywood did not assert any federal claims against BB, only a state-law claim, making Walker inapposite. See id., at *16.

Haywood's allegations, that BB's shoes are designed defectively because they come apart "after wearing [them a] couple of times" and their "sole material . . . comes apart when wet, or from normal wear, causing the shoe to develop a large flap from the heel to the middle of the shoe," taken as true, are plausible, as they show that the shoes did not perform as intended and

allow the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged. See Halloran., 41 N.Y.2d at 388, 393 N.Y.S.2d at 343. Moreover, contrary to BB's contentions, Haywood did assert that the alleged defect caused him physical injury, namely, pain in his feet, back, legs and swelling of his feet, and not simply that the shoes were "uncomfortable." As Haywood asserted that BB's shoes were defectively designed because they could not withstand regular and foreseeable use, a matter about which BB should have known, his claim for failure to warn is plausible. See Rastelli, 79 N.Y.2d at 297, 582 N.Y.S.2d at 376. BB provided no authority in support of its argument that Haywood's state-law claim, based on failure to warn, is "moot and inapplicable" to BB because he "did not freely purchase or acquire" the shoes and was compelled to wear them by corrections officials. Furthermore, at this stage of the litigation, Haywood is not required to show "any proof, whether directly or circumstantially, that the pair of shoes he was issued upon his entry to OBCC was in any manner 'unreasonably dangerous,'" as BB contends. Thus, dismissal of Haywood's state-law claim against BB is not warranted.

### *Amending the Complaint*

Haywood did not amend his complaint previously, the claims that survive the instant motions are not futile. BB has not addressed Haywood's request to amend his complaint, and the City and Latunji do not contend any prejudice would attend them by the amendment of the complaint. Therefore, Haywood should have an opportunity to amend his complaint to correct the deficiencies in the remaining claims, discussed above.

### RECOMMENDATION

For the foregoing reasons, I recommend that: (1) BB's motion, Docket Entry No. 39, be denied; (2) the City and Latunji's motion, Docket Entry No. 42, be granted, in part, and denied, in

part; and (3) Haywood be permitted to amend his complaint.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Paul A. Crotty, 500 Pearl Street, Room 1350, New York, New York, 10007, and to the chambers of the undersigned, 40 Centre Street, Room 425, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Crotty. *Failure to file objections within fourteen (14) days will result in a waiver of objections and will preclude appellate review.* See Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); Cephas v. Nash, 328 F.3d 98, 107 (2d Cir. 2003).

Dated: New York, New York        Respectfully submitted,
       February 26, 2014

*Kevin Nathaniel Fox*

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

Copy mailed to:

Keith Haywood

23